**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF IOWA**

**CENTRAL DIVISION**

| | | |
|---|---|---|
| ARROWOOD INDEMNITY COMPANY, | ) | |
| | ) | Case No: |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT OF ARROWOOD** |
| | ) | **INDEMNITY COMPANY FOR** |
| GUY CORNWELL and MELANIE | ) | **DECLARATORY JUDGMENT** |
| CORNWELL, | ) | **AND BREACH OF CONTRACT** |
| Defendants. | ) | |
| | ) | **JURY TRIAL DEMANDED** |

<u>**COMPLAINT FOR DECLARATORY JUDGMENT AND BREACH OF CONTRACT**</u>

Plaintiff Arrowood Indemnity Company, formerly known as Royal Indemnity Company, successor by merger to Royal Insurance Company of America ("Arrowood"), hereby submits this complaint for declaratory judgment and breach of contract against Guy Cornwell and Melanie Cornwell and, in support, alleges as follows:

**NATURE OF THE ACTION**

1.      This is an action for declaratory judgment and damages in which Arrowood seeks a declaration of its rights and obligations under an insurance policy issued by Arrowood (then known as Royal Indemnity Company ("Royal") to Kiwanis International, Inc. ("Kiwanis International") as the first named insured ("the Royal policy") with respect to lawsuits filed against Guy Cornwell ("G. Cornwell") and, in some instances, also against Melanie Cornwell

("M. Cornwell") (collectively "G. & M. Cornwell"), relating to alleged sexual abuse of and other harm to youth residents of the Kiwanis Vocational Home ("KVH") from 1986 to 1991.

2.     This action is brought pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201 *et seq.*, for the purpose of determining an actual controversy between the parties by construing the rights and legal obligations arising under a contract of insurance issued by Arrowood to Kiwanis International.

3.     This action also seeks damages for breach of contract.

4.     Arrowood seeks a declaration regarding its rights and obligations in connection with each of the following lawsuits filed against G. Cornwell and, in some instances, M. Cornwell (the lawsuits are referred to collectively as the "Underlying Lawsuits"):

   a.   *R.N. et al. v. Kiwanis International, et al.*, Thurston County (State of Washington) Superior Court, No. 15-2-00383-3 ("*R.N.* Action");

   b.   *N.P., et al. v. Kiwanis International, et. al.,* Pierce County (State of Washington) Superior Court, No. 21-2-05153-9;

   c.   *M.A., et al. v. Kiwanis International, et al.*, Pierce County (State of Washington) Superior Court, No. 18-2-06475-4 ("the *M.A.* Action");

   d.   *B.A.T., et al. v, Kiwanis International, et. al. ,* Pierce County (State of Washington) Superior Court, No. 21-2-08181-1;

   e.   *Kim, et al. v. Kiwanis International, et al.*, Pierce County (State of Washington) Superior Court, No. 20-2-05344-4;

   f.   *A.B., et al. v. Kiwanis International, et al.*, Pierce County (State of Washington) Superior Court, No. 19-2-05645-8;

g.  *Beasley, et al. v. Kiwanis International, et al.*, Pierce County (State of Washington) Superior Court, No. 21-2-04890-2;

h.  *Beglinger, et al. v. Kiwanis International, et al.*, Pierce County (State of Washington) Superior Court, No. 22-2-05019-1; and

i.  *P.R. v. Kiwanis International, et al.*, Pierce County (State of Washington) Superior Court, No. 22-2-10628-5 (*P.R.* Action").

5.  True and correct copies of the operative complaints for each of the Underlying Lawsuits in Arrowood's possession are attached sequentially at **Exhibit A**.

## PARTIES

6.  Arrowood is a Delaware corporation with its principal place of business in Charlotte, North Carolina, and is duly authorized to transact insurance business in the State of Iowa.

7.  Arrowood was formerly known as Royal Indemnity Company.  Royal Indemnity Company, now known as Arrowood, is the successor by merger to Royal Insurance Company of America.

8.  Defendants G. Cornwell and M. Cornwell are adult individuals and natural persons whose principal place of residence is in Ames, which is in the Central Division of the Southern District of the State of Iowa.

## BACKGROUND FACTS

9.  Upon information and belief, in 1985, Kiwanis International completed and submitted applications for insurance in Indianapolis, Indiana, for submission to Royal.

10.  In 1985, Royal issued an insurance policy to Kiwanis International in Indianapolis, Indiana, a policy that was renewed in 1986 and 1987.

11.     Indiana law governs the interpretation of the Royal policy as defined herein and every other issue in this case.

## JURISDICTION AND VENUE

12.     The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between Arrowood, on one hand, and the G. & M. Cornwell, on the other, and the amount in controversy exceeds $75,000, exclusive of interest and costs, and by virtue of the Declaratory Judgments Act, 28 U.S.C. § 2201(a), because this matter presents an actual controversy.

13.     This matter presents a case of actual controversy because G. and M. Cornwell assert that they are insureds and have sought a defense and indemnification under the policy that Royal issued to Kiwanis International, in connection with the claims against G. and M. Cornwell in the Underlying Lawsuits and purported settlements thereof; and Arrowood disputes that it owes G. or M. Cornwell a duty to defend or indemnify them under the Royal policy in connection with any of the Underlying Lawsuits or purported settlements thereof.

14.     An actual controversy also exists among the parties regarding the damages caused by the breach of G. and M. Cornwell of the Royal policy through entering into a settlement of certain of the Underlying Actions without Arrowood's consent, as described below.

15.     Venue is appropriate in the Southern District of Iowa pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. 1391(c)(1) because the defendant reside in this judicial district.

## THE UNDERLYING LAWSUITS

16.     This matter arises out of the Underlying Lawsuits filed against Guy Cornwell, as well as Melanie Cornwell, in their marital capacity, by certain former residents of KVH.

17.     The Underlying Lawsuits allege that each of the plaintiffs in those lawsuits was sexually abused and/or suffered other harm while they resided at KVH.

18.     KVH was owned and operated by Lewis County Youth Enterprises ("LCYE"), a now-defunct corporation founded by Charles McCarthy, Benjamin Martin, and/or Tom Van Woerden in the 1970s.

19.     From the time of its founding until after the expiration of the Royal policy, LCYE retained exclusive day-to-day control of KVH.

20.     LCYE owned the KVH land, facilities, and equipment.

21.     LCYE paid all KVH staff.

22.     In 1979, the Kiwanis Pacific Northwest District, certain Washington State-based Kiwanis clubs, and LCYE reached an agreement to use the Kiwanis name for the KVH facility.

23.     Kiwanis's original executive director, Charles McCarthy, sought to use the name to lend credibility to KVH in soliciting Washington Department of State and Human Services ("DSHS") contracts.

24.     KVH received DSHS contracts whereby it would provide group home care for boys.

25.     KVH was paid by the State of Washington as part of these contracts.

26.     The Underlying Lawsuits allege that G. Cornwell was an employee of KVH charged with overseeing KVH and ensuring that children placed there received care and support.

27.     The Underlying Lawsuits allege that G. Cornwell was an assistant executive director of KVH, and later a director of KVH.

28.     The Underlying Lawsuits assert that both G. Cornwell and M. Cornwell were employees of KVH.

29.     The Underlying Lawsuits assert that G. Cornwell was negligent in his role at KVH, causing the claimants to suffer sexual abuse and harm.

30.     As an employee of KVH, G. Cornwell received a salary for his work which was paid by either KVH or LCYE.

31.     G. Cornwell was compensated by KVH for his work as both an assistant executive director and director of KVH.

32.     G. Cornwell was not acting as a Kiwanis member in his role as an employee of KVH.

33.     G. Cornwell was not acting as an agent of any Kiwanis organization in his role as an employee of KVH.

34.     M. Cornwell was sued in her capacity as being in a marital community with G. Cornwell.

## THE ROYAL POLICY

35.     Royal issued to Kiwanis International a comprehensive general liability insurance policy (as stated above, "the Royal policy") subject to all of its terms, conditions, definitions, limitations, exclusions, and endorsements, under which G. Cornwell and M. Cornwell have tendered the Underlying Lawsuits.

36.     The Royal policy is policy no. PTG 34 88 11 and issued to Kiwanis International for the policy period of October 1, 1985 to October 1, 1986, and renewed through October 31, 1988.  A true and correct copy of the Royal policy is attached as **Exhibit B**.

37.     The Royal policy was issued to Kiwanis International at 3636 Woodview Trace, Indianapolis, IN 46268.

38.     The Royal policy provides in part as follows:

## I.   COVERAGE A – BODILY INJURY LIABILITY

## COVERAGE B - PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of

Coverage A. **bodily injury** or

Coverage B. **property damage**

in which this insurance applies caused by an **occurrence** and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such **bodily injury** or **property damage**, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of company's liability has been exhausted by payment of judgments or settlements.

39.     The Royal policy defines "bodily injury" as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom". The Royal policy defines "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

40.     The Royal policy includes a "Named Insured" endorsement, which provides that the following are named insureds under the Royal policy: "1. Kiwanis International, Inc.;" "2. Kiwanis Members[;] 3. Local Kiwanis Clubs[;] Kiwanis Districts[; and] Kiwanis Divisions" and "14. Volunteer Workers."  Members of any named insured are insureds, but only with respect to "liability for activities of the named insured on activities performed by such member on behalf of the named insured."

41.     The Royal policy contains additional exclusions and terms, limitations and conditions to coverage, including but not limited to, requiring the insured's assistance and

cooperation, no voluntary payments, non-waiver of Arrowood's consent, and no action against the company.

### G. & M. CORNWELL'S TENDER OF THE UNDERLYING LAWSUITS AND ARROWOOD'S DECLINATION OF COVERAGE

42.     Defendant G. Cornwell, through his counsel, first tendered the defense and indemnity of an Underlying Lawsuit to Arrowood on or around June 5, 2019, when it tendered the *R.N.* Action.

43.     By letter dated March 12, 2020, Arrowood declined defendant Guy Cornwell's tender of defense with respect to the *R.N.* Action because Cornwell did not qualify as an "insured" under the Royal policy.

44.     G. Cornwell and, when named as a defendant, M. Cornwell subsequently tendered the defense and indemnity of the remaining Underlying Lawsuits to Arrowood, except for the recently filed *P.R.* Action.  Arrowood declined defendant Guy Cornwell's tender of defense of the remaining Underlying Lawsuits (except for the untendered *P.R.* Action) because Cornwell did not qualify as an "insured" under the Royal policy.

45.     In addition to tendering the defense and indemnity of the Underlying Lawsuits under the Royal policy, counsel for G. Cornwell and M. Cornwell wrote to Arrowood numerous times demanding coverage under the Royal policy for the Underlying Lawsuits.

46.     Arrowood responded to counsel for G. Cornwell and M. Cornwell's demands by declining to provide a defense or indemnity to G. Cornwell and, when tendered, M. Cornwell.

47.     Arrowood declined to provide a defense to G. Cornwell and M. Cornwell in the Underlying Lawsuits on one or both of the following grounds: (1) the alleged conduct did not occur during the Royal policy period, and/or (2) Guy Cornwell was not an insured under the Royal policy for purposes of the Underlying Lawsuits.

48.    G. Cornwell and M. Cornwell dispute Arrowood's contention that he is not insured under the Royal policy and dispute Arrowood's determination that he is not entitled to receive a full defense and indemnity of the Underlying Lawsuits.

49.    G. Cornwell and M. Cornwell, through counsel, continue to contend that Arrowood has a duty to defend and to indemnify them against the Underlying Lawsuits.

50.    G. Cornwell and M. Cornwell have never provided any evidence to Arrowood, nor is Arrowood aware of any such evidence, demonstrating that they are  insureds under the Royal policy with respect to the Underlying Lawsuits.

### SETTLEMENT AGREEMENT, ASSIGNMENTS OF RIGHTS, STIPULATED JUDGMENT AND COVENANT NOT TO EXECUTE BETWEEN CORNWELL AND PLAINTIFFS IN THE UNDERLYING ACTIONS

51.    On or about October 18, 2022, before a jury was empaneled in the trial of the *M.A.* Action, and with no notice in advance to or involvement of Arrowood, plaintiffs in each of the Underlying Lawsuits except the *P.R.* Action entered into a settlement agreement, assignment of rights, stipulated judgment and covenant not to execute (the "Agreement") with defendants G. Cornwell and M. Cornwell.

52.    The *P.R.* Action was the only one of the Underlying Lawsuits that was not part of the Agreement, as it was not filed until December 8, 2022, after the Agreement was executed.

53.    It was not until nearly two months after the Agreement was entered into, on December 9, 2022, that the Agreement was provided to Arrowood.

54.    As part of the Agreement, G. Cornwell and M. Cornwell purported to resolve their liability in both the *M.A.* Action and the other active Underlying Lawsuits, except the *P.R.* Action.

55.     As part of the Agreement, G. Cornwell and M. Cornwell settled all of the remaining claims against them (except those subsequently brought in the *P.R.* Action) via a "covenant judgment," whereby they were required to make no payment, and the plaintiffs agreed to not seek recovery against them, and instead received an assignment from G. and M. Cornwell to the right to collect the settlement from any available insurance coverage, allegedly including the Royal policy.

56.     Based upon the Agreement, G. Cornwell and M. Cornwell lacked any monetary incentive to defend themselves or protect their interests in settlement negotiations.

57.     Instead, their sole incentive was to eliminate their involvement in and potential exposure to the numerous Underlying Lawsuits.

58.     In the Agreement, G. Cornwell and M. Cornwell settled each of the remaining claims against them for amounts far in excess of the settlement amounts in dozens of prior settlements entered into by other plaintiffs, the Kiwanis entities, G. and M. Cornwell, and the other settling parties.

59.     Several of the settlements entered into by G. Cornwell and M. Cornwell in the Agreement were multiple factors greater than the largest settlement ever previously entered into on behalf of all Kiwanis and KVH affiliated defendants relating to conduct at KVH.

60.     Despite not as yet formally providing notice to the insurers, including Arrowood, of the amount or other terms of their settlement or the reasonableness hearing, and despite the collusive assignment of insurance rights whereby plaintiffs in the Underlying Lawsuits will seek to recover the settlement amount from Arrowood, plaintiffs have moved for a determination that the terms of the Agreement are reasonable in a formal reasonableness hearing, currently scheduled for January 13, 2023.

61.    Arrowood did not consent to the Agreement.

62.    Arrowood did not consent to any assignment of rights under the Royal policy.

63.    Actual controversies have arisen and now exist between Arrowood, on one hand, and G. Cornwell and M. Cornwell, on the other, regarding the parties' respective rights and obligations under the Royal policy because the structure of the Agreement dictates that the plaintiffs in the Underlying Actions will ultimately seek to recover some or all of the settlement amounts from Arrowood.  Therefore, one or more judicial declarations of the rights and obligations of the parties is both necessary and appropriate so that Arrowood may ascertain its rights and duties under the Royal policy and applicable law.

## COUNT I - DECLARATORY JUDGMENT - NO DUTY TO DEFEND OR INDEMNIFY

64.    Arrowood reasserts and incorporates by reference, as if fully set forth herein, all preceding paragraphs of the complaint.

65.    An actual controversy has arisen and now exists between Arrowood, on the one hand, and G. Cornwell and M. Cornwell, on the other hand, concerning their respective rights under Royal policy as respects to whether Arrowood has a duty to defend and to indemnify G. Cornwell and M. Cornwell in the Underlying Lawsuits.

66.    Arrowood contends that it has no duty to defend and no duty to indemnify G. and M. Cornwell in the Underlying Lawsuits under the Royal policy because:

    a.    The Royal policy provides that Arrowood will pay on behalf of the insured sums the insured becomes legally obligated to pay as damages because of "bodily injury" caused by an "occurrence" when the policy was in effect from October 1, 1985 to October 31, 1988.  Many of the claims of the Underlying Lawsuits do not

allege any abuse occurring during the Royal policy period, and there is evidence that some of the abuse alleged did not occur during the Royal policy period.

b. As described fully above, the Royal policy contains a "Named Insured" endorsement, which provides that "Kiwanis Members" and "Volunteer Workers" are insureds under the Royal policy, but members are only insureds with respect to "liability for activities of the named insured on activities performed by such member on behalf of the named insured."  In order to qualify as an insured, G. Cornwell must be sued in his capacity as a Kiwanis member, for activities performed on behalf of a local Kiwanis club, or of Kiwanis International, during the term of the Royal policy.

c. With respect to G. Cornwell, the complaints in the Underlying Lawsuits generally allege that he was "at all relevant times" an assistant director of KVH and director of KVH.  The complaints in the Underlying Lawsuits do not allege that G. Cornwell was a Kiwanis member during the Royal policy period.

d. Cornwell has never provided Arrowood evidence demonstrating that either G. Cornwell  or M. Cornwell was a Kiwanis member during the Royal policy period or that either Cornwell was acting in the scope of a Kiwanis membership, rather than as an employee of KVH, with respect to work at KVH.

e. The allegations in the complaints of the Underlying Lawsuits and other material provided to Arrowood do not provide a basis to conclude that G. Cornwell or M. Cornwell qualify as an insured under the Royal policy and, therefore, Arrowood owed no duty to defend or indemnify G. Cornwell or M. Cornwell under the Royal policy.

12

67.     G. Cornwell and M. Cornwell contend that Arrowood was obligated to defend and to indemnify them for bodily injury caused by an occurrence under the Royal policy.

68.     Arrowood desires a judicial determination of its rights and duties under the Royal policy, if any, with respects to the duty to defend and to indemnify G. Cornwell and M. Cornwell for the conduct alleged in the Underlying Lawsuits.

69.     A judicial determination is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their rights and duties as aforementioned under the Royal policy and applicable law.  Accordingly, Arrowood has no plain, speedy and adequate remedy at law, and requests a declaratory judgment, adjudging that Arrowood has no duty to defend and no duty to indemnify G. Cornwell and M. Cornwell for any of the conduct alleged in the Underlying Lawsuits.

## PRAYER FOR RELIEF

**WHEREFORE**, Arrowood requests a judgment in its favor and against Cornwell as follows:

     i.     For a determination that, by reason of the terms, conditions, limitations, definitions, exclusions, and endorsements in the Royal policy and applicable law, there was no duty to defend G. or M. Cornwell in connection with the Underlying Lawsuits;

     ii.    For a determination that, by reason of the terms, conditions, limitations, definitions, exclusions, and endorsements in the Royal policy and applicable law, there was no duty to indemnify G. or M. Cornwell in connection with the Underlying Lawsuits; and

     iii.   Awarding Arrowood any other relief that this Court deems just and appropriate.

## COUNT II - DECLARATORY JUDGMENT -
## POLICY CONDITIONS

70.     Arrowood reasserts and incorporates by reference, as if fully set forth herein, all

preceding paragraphs of the complaint.

71.     The Royal policy conditions coverage as follows:

**3.     Insured's Duties in the Event of Occurrence, Claim or Suit**

\*\*\*

(c)     The insured shall cooperate with the company upon the company's
        request assisting in making settlements, in the conduct of suits and
        in enforcing any right of contribution or indemnity against any
        person or organization who may be liable to the insured because of
        injury or damage with respect to which the insurance is afforded
        under this policy, and the insured shall attend hearings and trials
        and assist in securing and giving evidence and obtaining the
        attendance of witnesses.  The insured shall not except at his own
        cost, voluntarily make any payment, assume any obligation or
        incur any expense other than for the first aid to others at the time of
        the accident.

72.     The Royal policy's aforesaid provision requires any insured seeking coverage,

including G. Cornwell and M. Cornwell, to cooperate with Arrowood in assisting in making

settlements and prohibits G. Cornwell or M. Cornwell from entering into any stipulated or

consent judgment or settlement voluntarily, including making any payment, assuming any

obligation, or incurring any expense other than for first aid, with any plaintiff in the Underlying

Lawsuits without the consent of Arrowood.

73.     Defendants G. Cornwell and M. Cornwell breached the duty imposed by this

clause by entering into the Agreement without informing or cooperating with Arrowood.

74.     Defendants G. Cornwell and M. Cornwell breached the duty imposed by this

clause by agreeing to an unreasonable settlement in cases in which there are very significant

issues that may impact on liability and damages.

14

75.     Defendants G. Cornwell and M. Cornwell breached the duty imposed by this clause by withholding information regarding their settlement discussions with the plaintiffs in the Underlying Lawsuits from Arrowood.

76.     Defendants G. Cornwell and M. Cornwell have assigned their rights in the Underlying Lawsuits that are the subject of the Agreement with respect to voluntarily payments, without the consent of Arrowood, in violation of this clause.

77.     Defendants G. Cornwell and M. Cornwell have voluntarily assumed obligations with respect to the Underlying Lawsuits that are the subject of the Agreement, without Arrowood's consent, and in violation of this clause.

78.     The Royal policy also contains the following condition regarding actions against Arrowood:

> **4.    Action Against Company**    No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

79.     Defendants G. Cornwell and M. Cornwell have entered into an agreement regarding their obligation to pay the plaintiffs in the Underlying Lawsuits without an actual trial or without a written agreement by Arrowood, in violation of this clause, and without Arrowood's consent to such an agreement.

80.     Defendants G. Cornwell and M. Cornwell entered into a stipulated or consent judgment or settlement with plaintiffs in the Underlying Lawsuits with respect to the Agreement, and such stipulated or consent judgment or settlement is not covered under the Royal policy.

81.     Since G. Cornwell and M. Cornwell have entered into a stipulated or consent judgment with plaintiffs in the Underlying Lawsuits that are the subject of the Agreement, it precludes them from bringing an action against Arrowood to recover under the Royal policy.

82.     Defendants G. Cornwell and M. Cornwell have taken the position that they have the right to control settlement negotiations, that they can enter into a stipulated or consent judgment or settlement with the plaintiffs in the Underlying Lawsuits despite Arrowood's lack of consent, and that such stipulated or consent judgment or settlement would obligate Arrowood to indemnify the portions of the stipulated or consent judgment or settlement through the Royal policy.

83.     An actual controversy exists between Arrowood, on one hand, and G. Cornwell and M. Cornwell, on the other, with respect to the Underlying Lawsuits and the Agreement.  G. Cornwell and M. Cornwell assert that they have the right to control settlement negotiations and may enter into a stipulated or consent judgment or settlement under the Royal policy despite Arrowood's lack of consent, that such stipulated or consent judgment or settlement would not violate G. Cornwell and M. Cornwell's duties under the Royal policy, and that Arrowood would be obligated to indemnify G. Cornwell and M. Cornwell for the stipulated or consent judgment or settlement.  The implementation of such a settlement is in violation of the Royal policy's terms, limitations, and conditions, because consent has not been provided.  Accordingly, the Court's declaration of the parties' rights and obligations is required to resolve the controversy.

**WHEREFORE**, Arrowood requests a judgment in its favor and against G. Cornwell and M. Cornwell as follows:

> i.    Declaring that the Duties in the Event of Occurrence, Claim or Suit and Action Against Company provisions of the Royal policy prohibits G. Cornwell and M. Cornwell from controlling settlement negotiations and/or

entering into a stipulated or consent judgment or settlement in the
Underlying Lawsuits without Arrowood's consent;

ii.    Declaring that Arrowood has no obligation to indemnify G. Cornwell and
M. Cornwell under the Royal policy for any stipulated or consent
judgment or settlement that G. Cornwell and M. Cornwell enters into with
the plaintiffs in the Underlying Lawsuits without an actual trial or without
Arrowood's written consent, which consent has not been provided; and

iii.    Awarding Arrowood any other relief that this Court deems just and
appropriate.

**COUNT III – BREACH OF CONTRACT**

84.    Arrowood reasserts and incorporates by reference, as if fully set forth herein, all

preceding paragraphs of the complaint.

85.    As quoted above, the Royal policy contains the following condition:

**3.    Insured's Duties in the Event of Occurrence, Claim or Suit**

***

(c)    The insured shall cooperate with the company upon the company's
request assisting in making settlements, in the conduct of suits and
in enforcing any right of contribution or indemnity against any
person or organization who may be liable to the insured because of
injury or damage with respect to which the insurance is afforded
under this policy, and the insured shall attend hearings and trials
and assist in securing and giving evidence and obtaining the
attendance of witnesses.  The insured shall not except at his own
cost, voluntarily make any payment, assume any obligation or
incur any expense other than for the first aid to others at the time of
the accident.

86.    G. Cornwell and M. Cornwell breached their duty imposed by this clause by

entering into settlement negotiations without informing or cooperating with Arrowood.

87.    G. Cornwell and M. Cornwell breached the duty imposed by this clause by

agreeing to unreasonable demands in cases in which there are very significant issues that may

impact on liability and damages.

88.     G. Cornwell and M. Cornwell breached the duty imposed by this clause by withholding information regarding their settlement discussions with the plaintiffs in the Underlying Lawsuits from Arrowood.

89.     G. Cornwell and M. Cornwell have agreed to make voluntary payments to plaintiffs in the Underlying Lawsuits through the Agreement, in violation of this clause.

90.     G. Cornwell and M. Cornwell have voluntarily assumed obligations in the Underlying Lawsuits, in violation of this clause.

91.     G. Cornwell and M. Cornwell have repudiated her obligations under the "Insured's Duties in the Event of Occurrence, Claim, or Suit" term of the Royal policy.

92.     G. Cornwell and M. Cornwell positively, absolutely, and unconditionally repudiated this term of the Royal policy by failing to cooperate with Arrowood in assisting making settlements and asserting that they have the right to control settlement negotiations.

93.     G. Cornwell and M. Cornwell have entered into a stipulated or consent judgment or settlement voluntarily, including making a payment, assuming an obligation, or incurring an expense other than for first aid with the plaintiffs in the Underlying Lawsuits without the consent of Arrowood, thereby purporting to resolve the Underlying Lawsuits without Arrowood's consent.

94.     Arrowood has been damaged and continues to be damaged by incurring costs and expenditures in light of the conduct of G. Cornwell and M. Cornwell and their breach of the Royal policy.

**WHEREFORE**, Arrowood requests a judgment in its favor and against the Cornwells as follows:

i.      Compensatory and consequential damages;

      ii.      Interest and costs, if found to be appropriate; and

      iii.     Awarding Arrowood such other relief that this Court deems just and appropriate.

**COUNT IV - DECLARATORY JUDGMENT -**
**NO PRESUMPTIVE OR PRECLUSIVE EFFECT OF "REASONABLENESS HEARING"**

95.     Arrowood reasserts and incorporates by reference, as if fully set forth herein, all preceding paragraphs of the complaint.

96.     With respect to the Agreement, one or more parties to the Agreement requested that the court in the Underlying Lawsuits conduct a "reasonableness hearing" to evaluate the reasonableness of the settlement values contained in the Agreement for purpose of attempting to bind Kiwanis International's insurers to the settlement values.

97.     Following receipt of the Agreement, Arrowood requested permission to intervene in the *M.A. v. Kiwanis International, et al.* Underlying Action, the proceeding where the reasonableness of the settlement values in the Agreement was to be judicially evaluated, in order to present evidence that the settlement values agreed to in the Agreement were not reasonable and were the result of collusion.

98.     Arrowood filed a motion to intervene because the Agreement ultimately contemplates recovery of the settlement values from Kiwanis International's insurers, including Arrowood.

99.     G. and M. Cornwell did not take a position on Arrowood's request to intervene.

100.    G. and M. Cornwell's assignees opposed Arrowood's request to intervene.

101.    Arrowood's motion to intervene in the *M.A. v. Kiwanis International, et al.* action was denied.

102.    Arrowood is not a party to the reasonableness hearing.

19

103.    The Agreement contemplates that the reasonableness hearing held in the *M.A. v. Kiwanis International* lawsuit shall create a presumption of the reasonable value of the settlements.

104.    Arrowood desires a judicial determination of its rights and obligations under the Royal policy, if any, with respect to any presumptions or preclusive effects created by the reasonableness hearing in the *M.A. v. Kiwanis International* lawsuit with respect to the Underlying Lawsuits.

105.    A judicial determination is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their rights and duties as aforementioned. Accordingly, Arrowood has no plain, speedy and adequate remedy at law, and requests a declaratory judgment, adjudging that because Arrowood is not a party to any of the Underlying Lawsuits, Arrowood is not subject to any presumptions or preclusive effects of a reasonableness hearing held in the *M.A. v. Kiwanis International* lawsuit with respect to any of the Underlying Lawsuits.

**PRAYER FOR RELIEF**

**WHEREFORE**, Arrowood requests a judgment in its favor and against Cornwell as follows:

    i.    For a determination that Arrowood is not precluded from making any arguments about the Agreement by any court determinations in the *M.A. v. Kiwanis International* action;

    ii.    For a determination that Arrowood is not subject to any presumptions due to findings of fact or conclusions of law made by the court in the *M.A. v. Kiwanis International* action, and

    iii.    Awarding Arrowood any other relief that this Court deems just and appropriate.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff Arrowood Indemnity Company hereby demands a trial by jury of issues so triable.

Respectfully submitted,

PATTERSON LAW FIRM, L.L.P.
505 Fifth Avenue, Suite 729
Des Moines, IA 50309-2390
Phone: 515-283-2147
FAX:   515-283-1002
Email: gwitke@pattersonfirm.com

By: _/s/ Gregory A. Witke_
     Gregory A. Witke

*Attorneys for Plaintiff Arrowood Indemnity Company*

Original filed.